UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERSPECTIVES THERAPY SERVICES,
LLC and TIANNA HOPPE-ROONEY,                      Civil Action No. 23-11663

                   Plaintiffs,         Judith E. Levy
v.                                                United States District Judge

BEHAVIORAL HEALTH PRACTICE                        David R. Grand
SERVICES, LLC and LIFESTANCE                       United States Magistrate Judge
HEALTH, INC.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 10) AND TO DISMISS ACTION WITHOUT PREJUDICE

### Background

In 2022, defendant Behavioral Health Practice Services, LLC ("BHPS") acquired the assets of plaintiff Perspectives Therapy Services, LLC ("Perspectives") (which was owned by plaintiff Tianna Hoppe-Rooney ("Hoppe-Rooney")) pursuant to an Asset Purchase Agreement (the "APA").[1]  The purchase price exceeded $20,000,000 and provided for an additional "Contingent Payment" of up to $3,000,000 if certain post-closing performance metrics were met.  The sale closed, and the parties now dispute how

---

[1] Defendant LifeStance Health, Inc. ("LifeStance"), an "affiliate" of BHPS, negotiated the APA as if it would be the purchaser, but ultimately "structured [it] such that Defendant [BHPS] . . . was the purchaser in the Agreement."  (ECF No. 6, First Amended Complaint ("FAC"), ¶ 33).  As discussed below, although Perspectives now tries to distinguish between LifeStance and BHPS (collectively, the "Defendants"), in its FAC, Perspectives treats them as one and the same as it relates to the APA's execution and the claims in this case.  (*See, e.g.*, FAC ¶ 1 ("This matter involves breach of contract and related claims arising out of the purchase **by Defendants** of the assets of Perspectives . . .") (emphasis added); ¶ 2 (". . . this action alleges the failure **by Defendants** to honor a material term of the [APA] . . .")) (emphasis added).

much, if any, of the additional $3,000,000 Contingent Payment is owed to Perspectives. When the parties couldn't agree, Perspectives and Hoppe-Rooney (collectively "Plaintiffs") filed suit in this Court, asserting claims for Breach of Contract (Count I), Unjust Enrichment (Count II), and Promissory Estoppel (Count III) against both Defendants.

Presently before the Court for a report and recommendation is Defendants' motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 10).  While 12(b)(6) motions typically ask the Court to find that the complaint's factual allegations, taken as true, "fail[] to state a claim upon which relief can be granted," Defendants' motion challenges the forum Plaintiffs selected for their lawsuit.  Specifically, Defendants argue that the APA's forum selection clause required Plaintiffs to bring their claims in Wisconsin state or federal court.  That clause provides:

> Governing Law; Venue.  This Agreement shall be governed by and interpreted according to the laws of the State of Delaware without regard to such state's conflicts of laws principles.  The parties hereby consent to and waive any objection to the jurisdiction and venue of any Wisconsin state or federal court with respect to any action or proceeding relating in any way to this Agreement and the parties agree that any action brought against either party by the other party relating to this Agreement shall be brought in such a court.

(ECF No. 6-1, PageID.116) (the "Forum Selection Clause").

In their response brief, Plaintiffs argue that the Forum Selection Clause is unenforceable because: "(1) it was procured by fraud on the part of Defendants and (2) in any event it is inapplicable to Defendant LifeStance [ ] because Defendant LifeStance was not a party to the APA and cannot be considered an intended third-party

beneficiary to this contract." (ECF No. 14, PageID.282).  They also argue in their response brief that "enforcing the choice of forum provision would contravene strong public policy." (*Id.*, PageID.290).  Defendants filed a reply, arguing principally that Plaintiffs failed to make the requisite showing of fraud required to invalidate the Forum Selection Clause and that because LifeStance is so "closely related" to BHPS and the APA's negotiation, it too may invoke that clause.  (ECF No. 16).  On November 9, 2023, the Court held oral argument, and Plaintiffs made a few additional arguments, including that some of their claims are independent of the APA and are governed by other agreements between the parties that contain forum selection clauses designating Michigan as the location for any lawsuits to be filed.  For the reasons explained below, Defendants' motion to dismiss should be granted.

**Applicable Standards**

*Enforceability of a Forum Selection Clause*

In a diversity suit, the enforceability of a forum selection clause is governed by federal law.  *See Goldman v. WSN, LLC*, No. 22-10504, 2022 WL 18858913, at *1 (E.D. Mich. Apr. 12, 2022) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)); *see also Williams Ins. and Consulting, Inc. v. Goosehead Ins. Agency, L.L.C.*, 533 F. Supp. 3d 555, 557-58 (E.D. Mich. 2020).[2]  As the Sixth Circuit explained in *Wong*, "the Supreme Court has announced a federal policy favoring enforcement of forum selection

---

[2] The APA's choice of law clause provides that the APA "shall be governed by and interpreted according to the laws of the State of Delaware" (ECF No. 6-1, PageID.116), but both parties analyze Defendants' motion with reference solely to Michigan and Sixth Circuit law.  Accordingly, at least for purposes of this Report and Recommendation, the Court will do so as well.

clauses and has held that such clauses 'should control absent a strong showing that [they] should be set aside.'"  *Wong*, 589 F.3d at 826 (quoting *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 587, 591 (1991)).  *See also Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) ("The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside.").  The plaintiff bears the burden to show that the court should not enforce the clause.  *See Wong*, 589 F.3d at 828.

The Sixth Circuit applies a three-part test to determine whether a forum selection clause is enforceable: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust.  *Id.*; *see also Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014); *Pensmore Reinforcement Techs., LLC v. McClay Indus. PTY, Ltd.*, No. 20-13073, 2022 WL 92331, at *3 (E.D. Mich. Jan. 7, 2022).[3]

*Standard of Review*

Defendants argue that Rule 12(b)(6) governs motions to dismiss based on the enforceability of forum selection clauses, and that, under the familiar standard that applies to such motions, the Court may only consider "the [allegations in the] Complaint and any

---

[3] Plaintiffs claim that the Sixth Circuit has added a fourth factor to this test – whether the forum selection clause would contravene strong public policy of the forum state.  (ECF No. 14, PageID.289-90) (citing *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 219-20 (6th Cir. 2021)).

exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Plaintiffs, on the other hand, argue that Defendants should have moved to dismiss pursuant to Rule 12(b)(3) ("improper venue"), and that under that Rule, the Court may examine facts outside those alleged in the complaint.

In *Wong*, the Sixth Circuit specifically noted that "this court has held that a forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue." *Wong*, 589 F.3d at 830 (citing *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 535 (6th Cir. 2002)).  That alone seems reason enough to reject Plaintiffs' argument that the Court should analyze Defendants' motion under Rule 12(b)(3).  Defendants rely on cases such as *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019), which explained, "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a permissible way to enforce forum-selection … clauses."  The *Wilson* court further explained that the party seeking to invalidate a forum selection clause must make "a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract," and that to do so, "there must be ***allegations of fraud*** that are specific to the inclusion of the forum-selection clause."  *Wilson*, 776 F. App'x at 327 (emphasis added).  The Sixth Circuit's reference to the complaint's "allegations of fraud" suggests that a traditional 12(b)(6) analysis should apply to Defendants' motion.

5

At the same time, the ultimate standard for enforcing a forum selection clause requires the Plaintiff not just to *allege* fraud, but to make a "strong showing" of such fraud. *Wong*, 589 F.3d at 828.  That requirement has led some courts to hold that where a plaintiff "argues that the forum selection clause was procured by fraud, the Court must look beyond the pleadings to determine whether the clause is enforceable, thus going beyond the permissible scope of a 12(b)(6) motion," making "a 12(b)(6) motion [] not an effective procedural vehicle" in such cases.  *Alternative Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. CIV.SA05CA0172-XR, 2005 WL 1862631, at *4 (W.D. Tex. July 8, 2005).

While Defendants seem to have the stronger argument, ultimately the Court need not resolve this particular dispute because even considering the information put forth by Plaintiffs in the briefs and at the hearing, they failed to make the "strong showing" required to avoid enforcement of the Forum Selection Clause.

## **Discussion**

### *To the Extent the Forum Selection Clause is Enforceable, LifeStance May Invoke It*

Plaintiffs first argue that Defendant LifeStance cannot invoke the Forum Selection Clause because it was neither a party nor an intended third-party beneficiary to the APA. (ECF No. 14, PageID.288-89).  Plaintiffs assert that an incidental beneficiary – like LifeStance – has no rights under the APA, including the right to enforce the forum selection clause.  (*Id.*).  This argument lacks merit on multiple fronts.

First, as Defendants properly note, in the Sixth Circuit, non-signatories of a contract "should … be subject to forum selection clauses where the alleged conduct of the [non-signatories] is so closely related to the contractual relationship that the forum selection

6

clause applies to all defendants." *Wilson*, 776 F. App'x at 329; *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012) (applying forum selection clause to non-privity defendants alleged to be "in cahoots with" the contract signatory); *Ford Motor Co. v. Kawasaki Kisen Kaisha Ltd.*, No. 21-10119, 2023 WL 5049251, at *7-11 (E.D. Mich. Aug. 8, 2023); *Bova Properties, L.L.C. v. Velocity Ventures, L.L.C.*, No. 14-14602, 2015 WL 2125359, at *2 (E.D. Mich. May 6, 2015) ("[A] non-signatory to a forum selection clause may be bound if the non-signatory is closely related to the contracting parties or dispute, such that it was foreseeable that it will be bound.") (quotations omitted).  Here, there can be no dispute that LifeStance was "so closely related" to the contractual relationship between the parties to the APA that it was foreseeable that the Forum Selection Clause would apply to it.

To begin with, the facts as alleged by Plaintiffs suggest that they actually believed, at every step of the APA's negotiation, that LifeStance, rather than BHPS (or any other entity), would be the purchaser.  Plaintiffs go so far as to title the paragraphs in their amended complaint about the transaction, "Perspectives' Acquisition **by *LifeStance***[.]" (ECF No. 6, PageID.92) (emphasis added).  Their specific allegations follow suit.  For example, Plaintiffs allege, "[i]n 2021, Hoppe-Rooney was approached by a company called LifeStance Health regarding a potential purchase of [Perspectives]." (*Id.*).  Plaintiffs allege that they met "with a LifeStance representative [] to discuss a possible acquisition ...." (*Id.*, PageID.93).  Although the ultimate purchaser was BHPS, rather than LifeStance, Plaintiffs allege that the APA was ultimately executed by "Ryan Pardo, Chief Legal Officer of LifeStance." (*Id.*).  Plaintiffs allege that during the negotiations, "LifeStance and

7

[BHPS] represented that [they] [sic] did not conduct business in the State of Wisconsin . . ." (*Id.*, PageID.94).  And, Plaintiffs allege that as part of the negotiations, Hoppe-Rooney agreed "to continue with LifeStance as an employee of the company . . ." (*Id.*).

Second, Plaintiffs' various theories of legal liability against Defendants treat them as essentially one entity.  For example, in the amended complaint's very first paragraph, Plaintiffs allege "[t]his matter involves breach of contract and related claims arising out of the purchase ***by Defendants*** of the assets of Perspectives . . ." (*Id.*, PageID.90) (emphasis added).  In Count I – Breach of Contract, Plaintiffs contend, "The Agreement Section 3 regarding payment of the Contingent Payment constituted a contractual obligation between ***Behavioral Health and LifeStance as purchasers*** to pay the full purchase price . . ." (*Id.*, PageID.97) (emphasis added).  Plaintiffs' other claims similarly treat the two Defendants – BHPS and LifeStance – as one and the same and seek to impose liability "jointly and severally" against them for all claimed damages.  (*Id.*, PageID.100).  It would be patently unfair to allow Plaintiffs to attempt to enforce the APA against LifeStance while simultaneously prohibiting LifeStance from invoking the APA's Forum Selection Clause.

For all of the above reasons, the Court finds that to the extent the Forum Selection Clause is enforceable, LifeStance may invoke it.

*The Forum Selection Clause is Enforceable*

1. *Proper Type of Fraud Alleged?*

Before the Court delves into the fundamental question of whether Plaintiffs made the "strong showing" of fraud required for the Court not to enforce the Forum Selection Clause, a preliminary problem for Plaintiffs is that it is not even clear that they allege the

type of fraud the Sixth Circuit recognizes as grounds for that relief.  As the *Wong* court explained, "the party opposing the [forum selection] clause must show fraud ***in the inclusion of the clause itself***" because "'[g]eneral claims of fraud [ ] do not suffice to invalidate the forum selection clause.'"  *Wong*, 589 F.3d at 828 (quoting *Assocs. in Urology,* 453 F.3d at 722) (emphasis added).  The *Wong* court explained the distinction by noting that in *Great Earth Cos. v. Simons,* 288 F.3d 878, 884, 890 (6th Cir. 2002), the Sixth Circuit "upheld a finding that the inclusion of a forum selection clause was fraudulently induced where the party seeking to enforce the clause had affirmatively represented that disputes would be resolved in a forum different from that dictated by the forum selection clause," whereas in *Assocs. in Urology,* 453 F.3d at 722, the Sixth Circuit enforced the forum selection clause because "the party opposing the clause failed to offer any evidence showing that it did not knowingly and willingly consent ***to the inclusion of the clause in the agreement***."  *Wong*, 589 F.3d at 828 (citations omitted) (emphasis added).  Thus, it appears the focus is on the forum selection clause's *inclusion* in the agreement in question, not the negotiation of the clause's terms.

Plaintiffs' argument here, though, is not that the Forum Selection Clause was fraudulently *included* in the APA, but that in negotiating that clause's terms, the Defendants made a false statement.  It is therefore questionable whether Plaintiffs even allege the type of fraud the Sixth Circuit recognizes as grounds for not enforcing an otherwise agreed-to forum selection clause.  But even if a false statement made in negotiating the terms of the Forum Selection Clause could be grounds for not enforcing it,

Plaintiffs' argument would still fail because they cannot make the requisite "strong showing" of fraud.

### 2.   *Plaintiffs Cannot Make a Strong Showing of Fraud*

Plaintiffs' claim is essentially that Defendants fraudulently induced them to agree to the Forum Selection Clause.  "To establish a prima facie claim of fraudulent inducement in Michigan, a plaintiff must prove the following: "(1) That [the defendant] made a material representation; (2) that it was false; (3) that when [the defendant] made it [the defendant] knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the defendant] made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that [the plaintiff] thereby suffered injury." *Trinity Health Corp. v. Devon MD, LLC*, No. 21-10788, 2022 WL 16082003, at *7 (E.D. Mich. Mar. 30, 2022) (quoting *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 408 (2008)).  "A critical component of a fraudulent-inducement claim is 'reasonable reliance' on the misrepresentation." *Chemico Sys., Inc. v. Spencer*, No. 22-11027, 2023 WL 1993783, at *7 (E.D. Mich. Feb. 14, 2023) (citing *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 499 (6th Cir. 2014)).  *See also Johnson v. Johnson,* No. 307572, 2013 WL 2319473, at *2 (Mich. Ct. App. May 28, 2013) (noting that reasonable reliance is a required element of a claim of fraudulent inducement). Moreover, "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v. First of Mich. Corp.,* 195 Mich. App. 470, 474

(1992) (citations omitted).  Plaintiffs here fail to satisfy both the false representation and reasonable reliance prongs.

The allegations and evidence Plaintiffs have put into the record fall well short of making a "strong showing" of fraud.  As noted above, Plaintiffs must show that Defendants made a material false representation with the knowledge of its falsity.  *Trinity Health Corp.*, 2022 WL 16082003, at *7.  Careful inspection of Plaintiffs' allegations and evidence shows that they fail to satisfy these requirements.

Plaintiffs provided a draft working copy of the APA which showed the parties' attorneys discussing the Forum Selection Clause's designation of "Wisconsin" as the location for any lawsuits to be filed.  When Plaintiffs' counsel asked, "Was this intended to be Michigan?" Defendants' counsel vaguely replied, "Idea was to identify a neutral state."  (ECF No. 14-4, PageID.346; No. 14-5, PageID.389).  In their amended complaint, Plaintiffs merely allege, "[a]t the time of execution of the Agreement, LifeStance and Behavioral Health represented that [they] [sic] did not conduct business in the State of Wisconsin and had no ties there[,]" and that Plaintiffs relied on that representation.  (ECF No. 6, PageID.94).  Similarly, in their brief in response to Defendants' motion, Plaintiffs assert that during a conference call that took place after Defendants' counsel had made the "neutral" location comment, Defendants' "representatives clarified that Wisconsin was neutral because neither of the parties had any presence there[,]" and that they relied on that clarification.  (ECF No. 14, PageID.284).[4]  Importantly, however, nowhere do Plaintiffs

---

[4] While Plaintiffs cite to Hoppe-Rooney's declaration for this proposition (ECF No. 14, PageID.284) (citing ¶ 21 of the declaration), Hoppe-Rooney simply does not make such an

actually allege that *any* of the foregoing statements by Defendants' representatives was untrue, let alone that Defendants knew the statement to be untrue when made.[5]

Not surprisingly, then, Plaintiffs' allegations about purported misrepresentations are vague and do not satisfy Rule 9's pleading standards which require a party pleading fraud to do so "with particularity." Fed. R. Civ. P. 9(b). Here, Plaintiffs' most salient allegation is that "LifeStance and Behavioral Health represented that [they] [sic] did not conduct business in the State of Wisconsin and had no ties there." (ECF No. 6, PageID.94). Plaintiffs fail to specify when this statement was made, by whom, and whether the statement was made orally or in writing. In short, for all of the foregoing reasons, Plaintiffs fail to adequately allege a false representation by Defendants, made with the knowledge of its falsity. *Trinity Health*, 2022 WL 16082003, at \*7.

Even if Plaintiffs could amend their complaint to affirmatively assert that in negotiating the Forum Selection Clause, Defendants' counsel made a specific representation about Defendants' business presence in Wisconsin that was knowingly false, Plaintiffs would still fail the "reasonable reliance" prong. As just discussed, *supra* at 11, the Forum Selection Clause, including the selection of Wisconsin rather than

---

averment in the declaration. Instead, she avers that her concerns were "allayed" when she learned that Defendants' counsel had made the first "neutral state" comment. (ECF No. 14-6, ¶¶ 21-22).

[5] Indeed, it is not even clear what specific statement Plaintiffs are now asserting was untrue. In their response brief, Plaintiffs vaguely allege that "it appears that there were no physical locations there that publicly advertise and that come up in an internet search," and that "[t]here is no website for [] BHPS that can be located online and no physical locations that can be found in a website search." (*Id.*, PageID.291). Plaintiffs go on to assert that Defendants have merely "alluded to locations in Wisconsin for both Defendants," and that "**If** Defendant BHPS had a presence in Wisconsin, [Defendants] intentionally misrepresented that fact with the intention that Plaintiffs would rely on [it] . . ." (*Id.*) (emphasis added).

Michigan as the forum state, was a specifically-negotiated term of the APA.  (ECF No. 14-4, PageID.346; No. 14-5, PageID.389).  Thus, the Forum Selection Clause was not a hidden term, or one thrown in at the last minute, and Plaintiffs had ample opportunity to fully investigate the matter before signing the APA.  And, as Defendants argued at the hearing, following Defendants' alleged clarification about not having a "presence" in Wisconsin or "ties" there, Plaintiffs could have readily investigated, but chose not to do so.  For example, Plaintiffs admitted that no search was conducted on the Wisconsin Corporate Records Search page, which would have revealed that both Defendants had filed corporate paperwork in the state.[6]  Plaintiffs did not dispute that the Wisconsin Corporate Records Search page was available to them.  *Webb,* 195 Mich. App. at 474.  For these reasons, and particularly given Plaintiffs' contention that they were concerned during the negotiations about agreeing to litigate in a forum where Defendants had ties (ECF No. 14-6, PageID.412) ("Upon hearing [that Defendants wanted Wisconsin as the forum state], I had some concern about having to enforce my rights related the sale of my Michigan business in another state's courts.  I was worried that I might not receive a fair adjudication of any disputes in a place where BHPS and/or LifeStance was well known."), any alleged reliance

---

[6]https://www.wdfi.org/apps/corpsearch/Details.aspx?entityID=L066280&hash=1745511872&searchFunctionID=8fb7b813-2649-41e4-899f-14c05c3a5be8&type=Simple&q=lifestance+health; https://www.wdfi.org/apps/corpsearch/Details.aspx?entityID=B101559&hash=1328198685&searchFunctionID=470290e9-b409-4662-8448-2465e0142d80&type=Simple&q=behavioral+health+practice (last visited November 30, 2023).  The Court does disagree with Defendants' position that, based on the present record, the Court could similarly rely on LifeStance's website (which lists 27 locations in that state).  (ECF No. 10, PageID.263).  Unlike the Wisconsin Corporate Records Search page, which shows Defendants' paperwork was filed as long ago as 2020, it is unclear whether the LifeStance website existed at the time in question.

on statements made by Defendants' counsel about Defendants' business presence in or ties to Wisconsin could not have been reasonable.

For all of the foregoing reasons, Plaintiffs cannot make a strong showing of fraud.

> 3. *Plaintiffs Made No Showing that Wisconsin Courts Would Ineffectively or Unfairly Handle the Suit or that Wisconsin is So Seriously Inconvenient that it would be Unjust to Require Them to Litigate the Suit There*

In addition to failing to make a strong showing of fraud, Plaintiffs fail to show that Wisconsin courts would ineffectively or unfairly handle Plaintiffs' lawsuit against Defendants or that Wisconsin would be so seriously inconvenient for Plaintiffs that requiring them to bring suit there would be unjust. *See Wong*, 589 F.3d at 828. Under the APA, Plaintiffs could select whether to file their complaint in any Wisconsin state or federal court, and they presented no facts whatsoever that would even hint at any difficulty obtaining a fair adjudication of their claims in those courts. Finally, although Plaintiffs appear to have no ties to Wisconsin and the salient witnesses in this case appear not to reside in that state, Wisconsin is not a far distance from Michigan, and given the compensation Plaintiffs received from the sale of Perspectives and the amount at stake in this case, they can easily afford to litigate the case in Wisconsin, and it would not be "unjust" for them to have to do so.[7]

---

[7] Plaintiffs' contention that courts in Wisconsin would not have personal jurisdiction over the parties does not raise a concern because, in the same section of the APA that contains the Forum Selection Clause, they expressly consented to personal jurisdiction in that state. (ECF No. 6-1, PageID.116). And, any witnesses who are truly unavailable to testify in-person in Wisconsin may do so by other means.

14

4.    *Plaintiffs' Policy Argument Lacks Merit*

Plaintiffs assert that one consideration for the Court when determining whether to enforce a forum selection clause is whether "the forum selection clause would contravene strong public policy of the forum state."   (ECF No. 14, PageID.289-90) (quoting *Lakeside Services, Inc. v. Cambria Company, LLC,* 16 F.4th 209, 219-22, n. 19 (6th Cir. 2021)).   But, in support of their position, Plaintiffs offer only their own personal opinion of Michigan's purported "strong public policy," as they merely assert:

> Under the circumstances of this case, Michigan has a strong public policy in maintaining Michigan disputes involving Michigan businesses within the state of Michigan. . . . Further, Michigan has a public policy in addressing business disputes that arise purely within the state and which involve health care providers and arguably affect disputes regarding patient care and the provision of mental health services within the state.  The Michigan Public Health Code, Mich. Comp. Laws § 333.1101, et seq, has numerous regulatory provisions for overseeing healthcare and healthcare-related business and the provision of health services within the state.  The state of Michigan arguably has a strong interest in being involved in the adjudication of these kinds of disputes and this weighs in favor of finding.

(ECF No. 14, PageID.292, 295).   Even if precedential authorities recognize that Michigan has these strong public policies, as the *Lakeside* case that Plaintiffs rely on recognizes, Michigan public policy also strongly favors the enforcement of contractual forum-selection clauses.  *Lakeside*, 16 F.4th at 219; *see also Prof'l Eng'g Assocs., Inc. v. Kaakouch*, No. 23-10967, 2023 WL 4084492, at *3 n. 1 (E.D. Mich. June 20, 2023) (citing cases).   Since, for the reasons stated above, the Court finds that the Forum Selection Clause should be enforced, overall, the public policy considerations cut in Defendants' favor.

15

5.      *Plaintiffs' Other Arguments Lack Merit*

Plaintiffs made a few additional arguments in support of their request for the Court to invalidate the Forum Selection Clause, all of which lack merit.  In their response brief, Plaintiffs argue that Defendants' conduct with respect to the Forum Selection Clause is part of a "pattern of conduct by Defendants . . . to use superior bargaining power and abusive tactics to make it impossible for Plaintiffs to receive the compensation that Defendants promised to pay [under the APA]."  (ECF No. 14, PageID.282).  That argument rings hollow.  Under the APA, Plaintiffs were to receive more than $20,000,000.  Even if Defendants' relative size dwarfs Plaintiffs', the consideration Plaintiffs were set to receive was so substantial that they should have investigated representations related to any term of the APA that was important to them, and, as noted above, *see supra* at 13, they admit that the Forum Selection Clause was such a term.  *Webb,* 195 Mich. App. at 474.  Yet, as discussed above, Plaintiffs failed to perform any such investigation.

At the hearing, Plaintiffs also argued that the Court should not give effect to the APA's Forum Selection Clause – which applies to any action brought by either party against the other "relating to [the APA]" – because some of their claims are independent of the APA and are governed by other agreements that contain a forum selection clause that designates Michigan as the location for any lawsuits to be filed.  The other agreements in question are (1) an Interim Services Agreement (ECF No. 6-3) and (2) a Provider Employment Agreement (ECF No. 6-2) (referred to in the documents as the "Transaction Documents").

In the Interim Services Agreement, the parties to the APA agreed how they would work together "until the completion of [the] transition of the clinical operations of [Perspective's] Practice to [BHPS]." (ECF No. 6-3, PageID.151). The Interim Services Agreement began on the APA's effective date, March 1, 2022, and had a four-month term that was renewable in two-month chunks. (*Id.*, PageID.151, 153-54). It also had a forum selection clause that provided, "Any dispute arising from this Agreement shall be subject to the exclusive jurisdiction of the federal and state courts located in the State of Michigan, and each Party consents and agrees to the personal jurisdiction of any such court with subject matter jurisdiction in any action under or involving this Agreement and agrees that the State of Michigan is the appropriate venue for the adjudication of any such dispute." (*Id.*, PageID.154-55).

Through the Provider Employment Agreement, Hoppe-Rooney agreed to provide services to LifeStance for one year, starting on the APA's effective date, March 1, 2022. (ECF No. 6-2) (the "Employment Agreement"). However, rather than a forum selection clause, the Employment Agreement merely contains a choice of law provision, which reads: "11.9. Governing Law. This Agreement shall be governed by the laws of the state identified in Schedule A, without regard to that state's conflicts of laws principles." (*Id.*, PageID.147). In turn, Schedule A merely specifies that "Michigan" shall be the "GOVERNING LAW." (*Id.*, PageID.149). After careful consideration of the various agreements, Plaintiffs' claims, and the parties' arguments, the Court finds that neither document negates the above analysis that Defendants may enforce the APA's Forum Selection Clause with respect to the claims asserted by Plaintiffs in this case.

17

As to the Employment Agreement, the analysis is quite simple.  That agreement only contains a choice of law provision, and Plaintiffs' contention that that provision also serves as a forum selection clause is meritless, as the two concepts are entirely distinct.  A choice of law provision merely specifies which's state's laws govern the parties' disputes, whereas a forum selection clause specifies the forum where any such disputes must be brought.  Indeed, Plaintiffs appear to recognize this distinction because the APA and the Interim Services Agreement that they signed each contain a choice of law provision *and* a forum selection clause.

Turning to the Interim Services Agreement, the analysis is more complex.  While that agreement does specify that "[a]ny dispute arising from [it] shall be subject to the exclusive jurisdiction of the federal and state courts located in the State of Michigan," as Plaintiffs themselves recognize, the disputes in this case all relate to the APA, and do not "arise from" the Interim Services Agreement.  In their amended complaint, Plaintiffs assert that this case "involves breach of contract and related claims arising out of the purchase by Defendants of the assets of Perspectives [] . . .  Specifically, this action alleges the failure by Defendants to honor a material term **of the Asset Purchase Agreement** which required an incentive payment in the amount of three million dollars ($3,000,000) if certain post-closing targets were achieved by Plaintiffs as sellers in that transaction."  (ECF No. 6, PageID.90) (emphasis added).  Similarly, in their response to Defendants' instant motion, Plaintiffs assert that this case "involves a contract dispute between Plaintiffs and Defendant BHPS due to [its] **default under the Asset Purchase Agreement** [] and failure to pay [the

Contingent Payment] **owed pursuant to that Agreement**."  (ECF No. 14, PageID.273) (emphasis added).

Review of Plaintiffs' claims in their amended complaint shows that they, too, relate to the APA.  In Count I, Plaintiffs pled a breach of contract claim that is specifically related to Defendants' failure to pay the $3,000,000 Contingent Payment as required under Section 3 *of the APA*.  (ECF No. 6, PageID.97-98).  Thus, this claim is clearly subject to the APA's Forum Selection Clause.  In Count III, Plaintiffs essentially recast their breach of contract claim as a "promissory estoppel" claim.  (*Id.*, PageID.99).  Plaintiffs assert that Defendants promised "they would pay the Contingent Payment of $3,000,000," that that promise "induce[d]" Plaintiffs to "achieve the benchmark" that would trigger the Contingent Payment, and that "Defendants [sic] promise must be enforced if injustice is to be avoided." (*Id.*).  Again, those are all obligations of the parties under the APA, which also is the document that defines the "Contingent Payment" and the referenced "benchmark."  (ECF No. 6-1, PageID.103).  Thus, this claim clearly relates to the APA and is subject to its Forum Selection Clause.

The analysis as to Count II of the complaint is somewhat more complicated, but ultimately leads to the same result.  The substance of Count II is a mere two sentences long:

> 74. The Defendants received a benefit from Plaintiffs in the form of the assets of Perspectives business and in performing the pre- and post-closing actions required under Agreement and the various incorporated Transaction Documents.

> 75. Inequity would result to Plaintiffs if Defendants were permitted to retain these benefits without fully compensating Plaintiffs for them.

(ECF No. 6, PageID.98).

Importantly, Plaintiffs admit that there is no dispute as to the Interim Services Agreement itself, which explained how the parties would work together "until the completion of [the] transition of the clinical operations of [Perspective's] Practice to [BHPS]." (ECF No. 6-3, PageID.151).  Plaintiffs now admit that Hoppe-Rooney and her husband "remained employed with the company *and helped ensure a smooth, successful transition* of Perspectives' thriving mental health therapy practice to a new owner – BHPS." (ECF No. 14, PageID.281) (emphasis added).  While Plaintiffs claim that "[t]he major component of the bargained-for compensation *for this task* came in the form of a $3,000,000 payment that was contingent upon Perspectives, under new ownership, meeting certain benchmarks" (*id.*) (emphasis added), in reality, *that payment* is part of Defendants' obligations under the *APA*, not the Interim Services Agreement.  (ECF Nos. 6-1, PageID.103; 6-3).  Under the *Interim Services Agreement*, Plaintiffs were to receive a *monthly "Management Fee"* that was essentially equal to BHPS' monthly net income after payment of certain expenses.  (ECF No. 6-3, PageID.153).  Plaintiffs do not contend that Defendants failed to pay those amounts.  Thus, substantively, Plaintiffs' unjust enrichment claim does not "arise from" the Interim Services Agreement, but rather, "relates to" the APA, meaning that this claim is also subject to the APA's Forum Selection Clause.

## Conclusion

For all of the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss **(ECF No. 10)** be **GRANTED**, and that this action be **DISMISSED WITHOUT PREJUDICE**.

Dated: December 1, 2023                         s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 1, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager